OPINION OF THE COURT
Bernard J. Fried, J.
Motion sequence numbers 002 and 003 are consolidated for disposition in accordance with the following decision and order. In motion sequence number 002, defendants move for an order disqualifying Douglas Wigdor, Esq. and the law firm of Thompson Wigdor & Gilly LLP (TWG) from continuing to act as plaintiffs counsel in this action. In motion sequence number 003, plaintiff moves for leave to submit new evidence in opposition to defendants’ motion to disqualify, and, pursuant to 22 NYCRR 130-1.1, for an award of attorney’s fees and costs in connection with that motion, and the imposition of sanctions against defendants, on the ground that defendants’ motion to disqualify is frivolous.
Plaintiff Patrick Hoeffner was an associate with defendant Orrick, Herrington & Sutcliffe LLP from 1999 through 2005. The complaint alleges that Orrick made certain promises or guarantees to Hoeffner that it would make him a partner, that those promises were not kept, and that, instead, Orrick asked him to leave the firm. The complaint asserts causes of action for breach of contract, fraud, promissory estoppel, conspiracy, unjust enrichment, breach of fiduciary duty, and intentional infliction of emotional distress.
Hoeffner is represented in this action by Douglas Wigdor, a partner of TWG, and is also acting as cocounsel on his own behalf. Defendants move to disqualify Wigdor and TWG on the ground that a conflict of interest exists between Wigdor’s representation of Hoeffner in this action and Wigdor’s prior attorney-client relationship with another individual (former client) who was an associate with Orrick in and before 2005. Former client contacted Wigdor by telephone in 2005, concerning Wigdor’s possible representation of him in connection with certain claims that he was considering asserting against Orrick, and former client gave Wigdor an 80-page outline setting forth the evidence that former client believed supported his claims. Former client and Wigdor met to discuss the possible representation, and allegedly spoke at length concerning the substance of former client’s possible claims. Former client subsequently decided not to retain Wigdor or TWG, informed Wigdor that he did not wish to retain him, and hired another attorney to pursue his claims *326 against Orrick. Former client allegedly sought and received Wigdor’s assurances that he would destroy the 80-page outline, and that the information former client had provided to him would remain privileged and confidential.
While former client was considering bringing claims against Orrick, he was aware that Hoeffner was also considering bringing claims against Orrick, and the two discussed their respective claims. According to former client, he and Hoeffner agreed in their discussions that, if either or both of them pursued claims against Orrick, neither of them would ever “seek discovery of certain materials about the other” (former client Mar. 30, 2006 affirmation 1Í 6). Former client concedes that, when Hoeffner asked him for the names of attorneys whom Hoeffner might retain for the purpose of pursuing his claims against Orrick, former client gave Hoeffner Wigdor’s name. Hoeffner retained Wigdor as his attorney and commenced this action on July 25, 2005.
On September 2, 2005, Hoeffner served Orrick with “plaintiffs first request for production of documents and information” (the first request). The first request asked Orrick to produce, inter alia, all documents concerning any agreement between Orrick and any attorney concerning consideration of the attorney for, or promotion of the attorney to, partnership; “all e-mails concerning [former client’s] nomination, consideration or promotion to partnership at Orrick, including any e-mails to or from Mihaela Grigore concerning [former client’s] promotion to partnership”; and various documents relating to certain other specifically named individuals (first request 1i 87). Orrick allegedly failed to produce documents responsive to the foregoing requests. On February 10, 2006, Hoeffner served defendants with “plaintiffs third request for production of documents and information” (the third request; collectively, with the first request, the document requests). The third request sets forth five document and information requests, each of which mentions former client by name, and asks defendants to produce documents or materials relating to former client.
Former client has submitted an affirmation in which he states that he supports defendants’ motion to disqualify Wigdor and TWG from representing Hoeffner in this action; that he objects to the document requests, and regards them as an effort “to drag [him] and [his] potential claims into this public lawsuit”; that he has concluded that it is in his own best interest “to keep [his] prior dispute with . . . Orrick ... a private and *327 confidential matter,” because he wants to “avoid damage to [his] professional career as an attorney”; and that, “[i]f necessary, [he] will intervene in this lawsuit to make [his] objections known” (former client Mar. 30, 2006 affirmation 1Í 9).
At the oral argument on motion sequence number 003, I denied so much of that motion as seeks the imposition of sanctions against defendants, and an award to Hoeffner of costs and attorney’s fees, and granted so much of the motion as seeks leave to submit new evidence in opposition to defendants’ motion to disqualify. The new evidence submitted by Hoeffner in motion sequence number 003 consists of recordings of three voice mail messages that former client left for Hoeffner, and an e-mail that former client’s attorney sent to Wigdor, all of which came into existence after defendants’ motion to disqualify was submitted. I have considered the new evidence, together with the evidence previously submitted in support of, and in opposition to, the disqualification motion.
Defendants argue that Wigdor and TWG should be disqualified because their continuing representation of Hoeffner violates two prohibitions on attorney conduct, relating to former clients, that are set forth in Code of Professional Responsibility DR 5-108 (a) (22 NYCRR 1200.27 [a]): DR 5-108 (a) (l)’s bar against a lawyer’s subsequent representation of interests which are adverse to the interests of a former client, and DR 5-108 (a) (2)’s bar against a lawyer’s disclosure or use of a former client’s confidences and secrets.[1] However, defendants have failed to establish that disqualification is warranted on the basis of either prohibition, and their motion is accordingly denied.
Code of Professional Responsibility DR 5-108 (a) (1) (22 NYCRR 1200.27 [a] [1]) provides, in relevant part, that *328 However, disqualification of Wigdor and TWG is not warranted under DR 5-108 (a) (1) in the first instance because former client, by his conduct, impliedly consented to Wigdor’s representation of Hoeffner in connection with the claims asserted in this action, with full knowledge of the relevant facts, and waived any right he may have had to object to that representation.
*327 “a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure . . . [thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client.”
*328 Former client concedes that he initially recommended Wigdor to Hoeffner for the very purpose that Hoeffner might retain Wigdor to represent him in connection with his claims against Orrick, and Hoeffner avers that he first met with Wigdor based solely upon the strength of former client’s recommendation of Wigdor. Former client does not dispute Hoeffner’s assertions that, following the initial recommendation, former client also told Hoeffner that Wigdor was “the kind of attorney [Hoeffner] would need if [he] intended to file suit against Orrick,” and suggested how Hoeffner might attempt to negotiate a reduction in the amount of the fee that Wigdor would charge Hoeffner for the representation (Hoeffner affirmation 1MI 7, 8). Nor does former client dispute Wigdor’s assertion that, following his initial consultation with Hoeffner, Wigdor received a number of telephone calls from former client, in which they discussed Hoeffner’s claims, and former client “attempted to convince [Wigdor] to provide representation for [Hoeffner]” (Wigdor May 23, 2006 affirmation 1i 7).
Former client indicates in his affirmation that, prior to the time when he was recommending Wigdor to Hoeffner, he and Hoeffner had discussed their respective possible claims against Orrick, and, further, that, “in my discussions with [Hoeffner], he and I agreed that, if one or both of us pursued a claim against Orrick, we would never seek discovery of certain materials about the other” (former client Mar. 30, 2006 affirmation 1i 6). Also prior to the time when he was recommending Wigdor to Hoeffner, former client had allegedly sought and received assurances from Wigdor that the information former client had shared with Wigdor was confidential. Thus, former client already knew, at the time when he was recommending Wigdor to Hoeffner: (1) the nature of his own possible claims against Orrick; (2) the nature of Hoeffner’s possible claims against Orrick; and (3) the substance of his prior communications with each of Hoeffner and Wigdor, that each of them knew the nature of his possible claims, and that each of them purportedly knew certain information, relating to his possible claims, that he did not want to be divulged. Accordingly, former client had full knowledge, at *329 the very time when he was recommending Wigdor to Hoeffner, of all of the facts relevant to the question of whether Wigdor’s representation of Hoeffner would present a conflict of interest vis-a-vis Wigdor’s prior “representation” of former client. Former client, himself an attorney, may also be presumed to have had an understanding of the significance of those facts.
Moreover, former client does not dispute either Hoeffner’s assertion that, after TWG filed the complaint in this action, “Former Client and [he] had extensive discussions about the facts underlying [their] respective claims [and] potential legal strategy” (Hoeffner affirmation 1i 10); or Wigdor’s assertion that,
“after TWG and [Hoeffner] entered into an attorney-client relationship, . . . Former Client and his new attorney . . . were in constant communication with [Wigdor] and TWG, discussing potential legal strategy they intended to use, updating [Wigdor and TWG] on the status of [former client’s] case, including . . . possible mediation and settlement negotiations” with Orrick (Wigdor May 23, 2006 affirmation H 8).
Thus, it is undisputed that — even after former client had retained his attorney, and Hoeffner had retained Wigdor — former client and his attorney continued to communicate in a cooperative manner with Hoeffner and Wigdor concerning Hoeffner’s and former client’s respective claims against Orrick, the facts underlying those claims, and the legal strategies that might potentially be used to advance the claims.
Given those continuing, cooperative communications, and former client’s recommendation of Wigdor to Hoeffner — all of which occurred while former client possessed full knowledge of the facts relevant to the question of whether Wigdor’s representation of Hoeffner presented a conflict of interest with his prior “representation” of former client — former client must be deemed to have knowingly consented to Wigdor’s and TWG’s representation of Hoeffner in this action (see Rosewood Apts. Corp. v Perpignano, 2000 WL 145982, *6 n 8, 2000 US Dist LEXIS 1255, *18 n 8 [SD NY, Feb. 7, 2000] [stating that “a client’s consent to his attorney’s . . . representation of another party need not be in writing and may ... be implied from the circumstances”]).[2] Former client, by his affirmative conduct in support of and in cooperation with Wigdor’s representation of *330 Hoeffner, must also be deemed to have waived any right he may have had to object to that representation.
Even absent former client’s implied consent to, and waiver of any right he may have had to object to, Wigdor’s and TWG’s representation of Hoeffner, defendants would have failed to establish that disqualification of Wigdor and TWG is warranted under DR 5-108 (a) (1). A party seeking disqualification of its adversary’s lawyer pursuant to DR 5-108 (a) (1) must prove that there was an attorney-client relationship between the moving party and opposing counsel, that the matters involved in both representations are substantially related, and that the interests of the present client and former client are materially adverse. (<Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 636 [1998].)
Hoeffner does not dispute that Wigdor’s and TWG’s representation of him in this action is substantially related to Wigdor’s prior “representation” of former client, or that, for purposes of DR 5-108 (a) (1), there was an attorney-client relationship between former client and Wigdor. Hoeffner does argue that defendants’ motion to disqualify should be denied because there was no former attorney-client relationship between Wigdor or TWG and any of the defendants, who are the movants on the motion. However, Hoeffner has not established that defendants’ motion to disqualify should be denied on that ground.
It is true that a motion to disqualify an attorney pursuant to DR 5-108 (a) (1) will generally be denied when it is brought by a party who had no prior attorney-client relationship with the attorney sought to be disqualified (see ABA/BNA Lawyers’ Manual on Professional Conduct 51:217 [2002]; see e.g. Brooklyn House of Hardware & Locks, Inc. v Fried, 9 AD3d 378, 378 [2d Dept 2004]). Courts have ordinarily reasoned that “[t]he basis of a disqualification motion is an allegation of a breach of a fiduciary duty owed by an attorney to a current or former client” (Corbelli v General Acc. Ins. Co. of Am., 198 AD2d 760, 760 [4th Dept 1993] [internal quotation marks omitted]; see also Matter of Reichenbaum v Reichenbaum & Silberstein, 162 AD2d 599, 600 [2d Dept 1990]; Matter of Town & Country Constr. Co. [Sears — Boucher], 160 AD2d 1085, 1085 [3d Dept 1990]). In accordance with that reasoning, courts have usually concluded *331 that, where the attorney sought to be disqualified has never represented the movant, there can be no duty owed by the attorney to the movant, and, hence, no duty to the movant which could have been breached so as to form the basis for a disqualification (see Matter of Reichenbaum v Reichenbaum & Silberstein, 162 AD2d at 600). Moreover, “[c]ourts naturally tend to be skeptical about the motive for seeking disqualification when someone other than the former client raises the issue,” since the movant may be attempting to use the disqualification motion as a tactical weapon — e.g., to get rid of effective opposing counsel or otherwise derail the litigation — “rather than to protect the interests of justice” (ABA/BNA Lawyers’ Manual on Professional Conduct 51:217 [2002]).
However, motions to disqualify pursuant to DR 5-108 (a) (1) have been granted, in rare instances, where the movant had no prior attorney-client relationship with the attorney sought to be disqualified, and the motion was based, instead, upon a prior attorney-client relationship between the attorney and a nonparty to the action (see e.g. Woodson v Mendon Leasing Corp., 253 AD2d 669, 669 [1st Dept 1998]). Furthermore, “[a] former client who is not a party to litigation . . . may nevertheless demand removal of his former counsel in substantially related litigation where the current client’s interests are materially adverse to those of the former client” (ABA/BNA Lawyers’ Manual on Professional Conduct 51:215 [2002]). Here, former client’s affirmation states that he supports defendants’ disqualification motion, and that he will intervene in this action, if necessary, to make his objections known. Accordingly, I will not deny the branch of defendants’ motion which seeks disqualification pursuant to DR 5-108 (a) (1) on the ground that none of the movants formerly had an attorney-client relationship with Wigdor or TWG.
However, disqualification pursuant to DR 5-108 (a) (1) would not be warranted — even if former client had not consented with full knowledge of the relevant facts to, and waived any right he may have had to object to, Wigdor’s and TWG’s representation of Hoeffner — because defendants have failed to establish that Hoeffner’s interests in this action are materially adverse to those of former client, in a manner justifying disqualification. Former client does not, in fact, actually assert that his and Hoeffner’s interests in this action are materially or fundamentally adverse, but only that Wigdor, by serving Orrick with the document requests which seek information concerning him, has *332 “act[ed] in a manner contrary to my interests” (former client Mar. 30, 2006 affirmation It 10).[3] Former client’s affirmation states:
“I object to the[ ] discovery requests and regard them as harmful to my own personal and professional interests . . . For personal and professional reasons, I chose not to make public the claims I believed I had against . . . Orrick . . . These discovery requests are an effort to drag me and my potential claims into this public lawsuit against. . . Orrick . . . , after I have concluded that it is in my own best interest to keep my prior dispute with . . . Orrick ... a private and confidential matter. I did that because I wanted to be able to move on with my life, keep my prior dispute with . . . Orrick . . . a private matter, and avoid damage to my professional career as an attorney. Public disclosure of these matters would in my view be disastrous to my career and is something I have taken extraordinary steps to avoid.” (Former client Mar. 30, 2006 affirmation 1Í 9.)
Thus, the essential adversity of interests between Hoeffner and former client, on the basis of which defendants seek disqualification pursuant to DR 5-108 (a) (1), is that Hoeffner has asked for certain information relating to former client’s prior dispute with Orrick to be disclosed by defendants in discovery, whereas former client wishes to have no involvement in this action, or public disclosure of any information relating to his prior dispute with Orrick.
However, that is not a material adversity warranting disqualification. Former client and defendants have failed to articulate any manner in which Hoeffner’s success in this action will have any effect at all, let alone a detrimental effect, upon any of former client’s legal rights, obligations, or interests. Indeed, former client readily concedes that he “do[es] not have any stake in, or particularly care about, the outcome of. . . Hoeffner’s litigation with Orrick, only that Hoeffner and Wigdor leave [his] unrelated confidences alone so that [he] can succeed in [his] profession” (former client June 29, 2006 affirmation 1i 6). That the interests of Hoeffner and former client in this action are not materially adverse is further demonstrated by the undisputed *333 fact, already noted, that, after Hoeffner had retained Wigdor to represent him in this action, former client and his attorney continued to engage in cooperative communications with Hoeffner and Wigdor concerning the facts underlying, and the legal strategies which might potentially be used to advance, Hoeffner’s and former client’s respective claims. As previously stated, former client did not object to Wigdor’s representation of Hoeffner until after the document requests were served.
That the adversity of interests between Hoeffner and former client is not a material adversity, for purposes of determining whether disqualification is warranted, is indicated, finally, by the fact that the remedy of disqualification would be ill-suited to achieve the purpose for which the disqualification is purportedly sought. First, disqualification would be an overly drastic means of addressing former client’s privacy concerns, because those concerns could presumably be resolved by the less extreme remedy of an appropriately-tailored protective order.[4] Furthermore, and in any event, disqualification would not likely be adequate to address or resolve former client’s privacy concerns. Hoeffner is acting as cocounsel in this action, on his own behalf, and alleges that he was personally involved in drafting the document requests to which former client objects (see Hoeffner affirmation Iff 10-11). Assuming that defendants’ motion to disqualify was granted, Hoeffner himself, through whatever new counsel he employed, would presumably serve the same document requests upon Orrick, placing former client in the same position that he is in now. That defendants seek the drastic remedy of disqualification, when a narrower protective order would better achieve the purpose for which the disqualification is purportedly sought, strongly suggests that defendants are attempting to use their motion to disqualify as a tactical weapon rather than as a means to protect former client’s legitimate interests.
Accordingly, the branch of defendants’ motion which seeks disqualification pursuant to DR 5-108 (a) (1) is denied on two grounds: first, because former client, with full knowledge of the relevant facts, impliedly consented to Wigdor’s and TWG’s representation of Hoeffner in this action and waived any right he may have had to object to that representation; and, additionally, *334 because former client’s interests in this action are not materially adverse to those of Hoeffner. However, former client’s implied consent and waiver with respect to Wigdor’s representation of Hoeffner in this action did not, in and of itself, necessarily constitute a consent by former client to Wigdor’s use of his purported confidences or secrets in this action, or a waiver by former client of his right to object, pursuant to Code of Professional Responsibility DR 5-108 (a) (2), to Wigdor’s use of his purported confidences or secrets in this action. Nevertheless, defendants have failed to establish that Wigdor and TWG should be disqualified pursuant to DR 5-108 (a) (2).
Code of Professional Responsibility DR 5-108 (a) (2) (22 NYCRR 1200.27 [a] [2]) provides, in relevant part, that “a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure . . . [u]se any confidences or secrets of the former client,” except under certain specified circumstances which neither side claims to be applicable here. In order to succeed on a motion to disqualify an adversary’s attorney pursuant to DR 5-108 (a) (2), a movant must demonstrate “the existence of a reasonable probability of disclosure or use of a former client’s confidences and secrets” (Waehner v Northwest Bay Partners, Ltd., 30 AD3d 799, 800 [3d Dept 2006] [internal quotation marks omitted]; see also Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d at 637). Defendants have failed to make the requisite showing.
Defendants have failed to establish, as a preliminary matter, that, by reason of the document requests, Wigdor or TWG has already breached any obligation owed to former client under DR 5-108 (a) (2). Former client asserts in his affirmation that the first request “appeared to me to be utilizing privileged and confidential information I had provided to Wigdor,” and that, based upon his review of the third request, “it appears to me that . . . Wigdor and his firm, in order to pursue [Hoeffner’s] lawsuit, are utilizing the client confidences and secrets (as those terms are defined in DR 4-101 [A]) that I shared with . . . Wigdor” (former client Mar. 30, 2006 affirmation 1111 7, 11). However, former client’s assertions are hedged and conclusory. Former client asserts merely that the document requests “appear” to use his confidences and secrets, rather than that they unequivocally do, and fails to provide sufficient information — concerning the nature of any confidence or secret used or disclosed by Wigdor or TWG in the document requests — to permit a determination that there has been a violation of DR 5-108 (a) (2).
*335 Moreover, Wigdor asserts in his affirmation that he learned of the information which was used in the document requests, and which former client claims to be secret and confidential, through two channels that were outside of the attorney-client relationship he had with former client, namely, his conversations with former client and former client’s attorney, which occurred after Hoeffner had retained TWG, and his communications with Hoeffner, who conveyed to Wigdor certain information that former client had conveyed to Hoeffner. Former client does not specifically dispute Wigdor’s assertions, but states that, although Wigdor contends that the document requests were formulated based upon information obtained “from sources other than me,” “I find that hard to believe,” because “any information I gave directly to [Hoeffner] about my claims and my situation was far less detailed than that which I gave . . . Wigdor” (former client Mar. 30, 2006 affirmation 1112). However, former client does not deny that he ever conveyed to Hoeffner any of the specific information contained in the document requests, or that he provided that information to his attorney, or that his attorney could have conveyed that information to Wigdor. Former client does not identify any specific information contained in the document requests which he conveyed to Wigdor and which could not have come to Wigdor through Hoeffner or through conversations Wigdor had with former client and his attorney.
Insofar as Wigdor obtained the information contained in the document requests either from Hoeffner or from conversations with former client and his attorney — and former client does not adequately dispute Wigdor’s assertions that he did — that information is not in the nature of a protected confidence or secret. Code of Professional Responsibility DR 4-101 (a) (22 NYCRR 1200.19 [a]) provides that “\c]onfidence refers to information protected by the attorney-client privilege under applicable law, and secret refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.” (Emphasis added.)
Insofar as former client communicated information to Hoeffner, which Hoeffner then communicated to Wigdor, that information was neither “protected by the attorney-client privilege,” so as to constitute a confidence, nor gained by Hoeffner or Wig *336 dor “in the professional relationship,” so as to constitute a secret.[5]
Similarly, information which former client and his attorney communicated to Wigdor after former client had decided not to retain Wigdor, and had retained another attorney instead, could not be either a confidence or a secret. Defendants concede that “Former Client’s attorney-client relationship [with Wigdor and TWG] began and ended before . . . Hoeffner became a client of Wigdor” (defendant’s reply mem of law at 9). Thus, by the time former client and his attorney were communicating with Wigdor, in connection with Wigdor’s representation of Hoeffner, any “representation” of former client by Wigdor had already ended. As noted by one commentator, “factual information obtained before a representation begins or after it ends falls outside the reach of DR 4-101 (A),” because “information gained outside of . . . the professional relationship is not protected by DR 4-101” (Simon’s New York Code of Professional Responsibility Annotated, at 484 [2006 ed]). Insofar as former client and his attorney shared factual information with Wigdor after former client had retained his attorney and Hoeffner had retained Wigdor, the sharing of information could only have been intended to be for the mutual benefit of both former client and Hoeffner in connection with their respective claims against Orrick. Under the circumstances, former client and his attorney could not have had any reasonable expectation of confidentiality with respect to the information thus shared, or that Wigdor would have received the information with any other purpose than to utilize it for the benefit of Hoeffner.
Defendants have also failed to establish that there is a reasonable probability that Wigdor and TWG will disclose or use former client’s confidences and secrets in the course of their prospective representation of Hoeffner in this action. “While a movant need not actually spell out the claimed secrets and confidences in order to prevail [on a motion to disqualify pursuant to DR 5-108 (a) (2)], it must at a minimum provide ... information sufficient to determine whether there exists a reasonable probability that DR 5-108 (A) (2) would be violated” (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d at 638). Mere generalized assertions of access to confidences and secrets are insufficient to justify disqualification (see id.).
*337 Here, former client and defendants have failed to provide sufficient information to support a determination that former Ghent furnished Wigdor with any particular confidential or secret information, in the course of their “attorney-client relationship,” which it is reasonably probable that Wigdor will use in his representation of Hoeffner, such that DR 5-108 (a) (2) would be violated. Former client’s primary concern appears to be that he and his prior dispute with Orrick not be subject to any public disclosure, or involved in any way, in this action. However, former client and defendants have not established that the fact that former client had a dispute with or claims against Orrick is confidential or secret information, which could serve as the basis for a disqualification of Wigdor or TWO pursuant to DR 5-108 (a) (2).
For the foregoing reasons, it is hereby ordered that plaintiffs motion (sequence number 003) is granted, but only in part, to the extent that plaintiff is granted leave to submit new evidence in opposition to defendants’ previously submitted motion to disqualify, and the motion is otherwise denied; and it is further ordered that defendants’ motion (sequence number 002) to disqualify Douglas Wigdor, Esq. and Thompson Wigdor & Gilly LLP from continuing to act as plaintiffs counsel in this action is denied.

. Although defendants also move to disqualify based upon Code of Professional Responsibility DR 4-101 (22 NYCRR 1200.19), that is not an independent ground for disqualification. DR 5-108 (a) (2) governs an attorney’s obligation to preserve the confidences and secrets of a former client, whereas DR 4-101 governs an attorney’s obligation to preserve the confidences and secrets of a current client. Inasmuch as former client does not claim to be a current client of Wigdor and TWG, DR 4-101 is relevant here only insofar as it must be referred to for purposes of applying DR 5-108 (a) (2).

. Even now, former client does not assert that he does not consent to, or that he objects to, Wigdor’s representation of Hoeffner. Rather, former client *330 asserts that he objects to, and that he never consented to the “situation” created by Wigdor’s service upon Orrick of the document requests, which seek information concerning former client (former client Mar. 30, 2006 affirmation ¶¶ 9, 10). .

. Defendants, as well, acknowledge that it was “the document requests [which] place [former client] in a situation adverse to . . . Wigdor” (defendants’ mem of law in support at 11).

. I have already ordered that the parties use the term former client in place of that individual’s real name in papers filed with the court, and in oral proceedings before the court, and defendants have not explained why these procedures will not adequately protect former client’s interests.

. Although Hoeffner is an attorney, neither former client nor defendants assert that there was an attorney-client relationship between Hoeffner and former client, or that any communication between them would be subject to the attorney-client privilege.